AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

**FILED**
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Josiah Bodie | ) | Case No. **24mj1659** |
| (YOB 2002) | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of _____ in the county of **San Juan** in the
_____ District of **New Mexico**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1153 | Offenses committed within Indian Counrty |
| 18 U.S.C. § 113(a)(3) | Assault with a dangerous weapon, intent to do bodily harm |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Tyler Rackham, Special Agent
*Printed name and title*

**telephonically, signed electronically**
Sworn to ~~before me and signed in my presence~~.

Date: **11/13/2024**

City and state: **Farmington, NM**

_____
*Judge's signature*

B. Paul Briones, US Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>VS<br><br>JOSIAH BODIE<br>Year of birth: 2002 | Case No. _____<br><br>AFFIDAVIT IN SUPPORT OF<br>PROBABLE CAUSE ARREST |

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Tyler Jack Rackham, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"). I have been employed with the FBI since January 2020. As such, I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent with statutory arrest authority charged with conducting criminal investigations of alleged violations of federal criminal statutes, including Title 18 of the United States Code. Prior to my employment by the FBI, I was a Law Enforcement Officer in the State of Utah for six years. I am presently assigned to the Farmington Resident Agency (RA), Albuquerque Division, where my duties include investigating violations of Federal law, specifically those violations occurring on the Navajo Indian Reservation.

2. I have received training and gained experience in the investigation and enforcement of major crimes including murder, firearms offenses, and other federal crimes. Additionally, I have received training and experience in interview techniques, arrest

procedures, search warrant applications, the execution of searches and seizures, and various other criminal laws and procedures. I have previously participated in investigations within Indian Country involving the crimes enumerated below.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officers, and witnesses. Because this affidavit is submitted for the limited purpose of securing a criminal complaint, I have not included each and every fact known to me concerning the investigation. I have set forth only those facts that I believe are necessary to establish that probable cause to support a criminal complaint as explained below.

4. This affidavit is being submitted in support of a criminal complaint charging Josiah BODIE (**BODIE**) YOB 2002 with 18 U.S.C. §§ 1153 and 113(a)(3), assault with a dangerous weapon.

## RELEVANT STATUTES

5. 18 U.S.C. § 1153(a), in relevant part, states: "Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, . . . a felony assault under section 113 . . . shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States."

## PROBABLE CAUSE

6. On November 12, 2024, Navajo Nation Police Department (NNPD) responded to a call for service at Basha's grocery store in Shiprock New Mexico, which

is within the exterior boundaries of the Navajo Nation Indian Reservation. NNPD were called to the area on reports that a stabbing had occurred.

7. When Officers arrived, they found T.T., year of birth, 1969, hereinafter referred to as JOHN DOE, with an apparent stab wound. Witnesses on scene told Officers another male was involved, and he had walked toward a nearby gas station. Officers were able to make contact with **BODIE** who had an apparent knife wound to his left arm. Officers discovered BODIE was in possession of a knife. Officers noted the knife had a handle with brass knuckles.

8. JOHN DOE and **BODIE** were transported to the Northern Navajo Medical Center (NNMC) for treatment. Investigators responded to NNMC and conducted interviews of JOHN DOE and **BODIE**.

9. **BODIE** was located at NNMC's emergency room with an injury to his left arm. **BODIE** told investigators that he had a misunderstanding with an individual named "Tony". **BODIE** did not know "Tony's" last name. **BODIE** told investigators that the misunderstanding was over a joke told by **BODIE**.

10. **BODIE** told investigators that he was with "Tony" outside of the grocery store when the misunderstanding occurred. **BODIE** observed "Tony" get into an aggressive posture. **BODIE** also noted that "Tony" eventually pulled out a knife, so in order to defend himself, **BODIE** pulled out his own knife.

11. **BODIE** and "Tony" engaged in a physical altercation. BODIE was not sure at what point he was stabbed in his left arm. Investigators asked BODIE if he could

describe the knife that "Tony" possessed. BODIE stated he could not recall what the knife looked like.

12. Investigators asked BODIE if he was with anyone else during the altercation with "Tony". BODIE noted a female friend was present during the incident. BODIE refused to provide the name of the female friend.

13. Investigators also spoke to JOHN DOE at NNMC's emergency room. JOHN DOE was at a marathon gas station when he was approached by a male. JOHN DOE did not know the male. The male wanted to fight JOHN DOE. JOHN DOE did not want to fight the male so JOHN DOE began to walk away toward Bashes grocery store. JOHN DOE did not know why the man wanted to fight him. While walking to the grocery store the man pushed JOHN DOE to the ground. JOHN DOE got up off the ground and continued to walk to the grocery store. The man continued to follow JOHN DOE.

14. JOHN DOE eventually made it to the grocery store. JOHN DOE heard someone say something to the man like "go get him". JOHN DOE stated he was then attacked by the man. JOHN DOE didn't realize he had been stabbed during the attack. JOHN DOE thought the man had been hitting and kicking him.

15. JOHN DOE noted that he possessed a knife at the time of the attack. JOHN DOE had his knife in his back pocket but never pulled it out. The knife was later collected by NNPD at the hospital. NNPD advised the knife was a folding knife and it did not have blood on the blade but had blood on the handle. It is unclear at this time whose blood is on the handle of JOHN DOE's knife.

16. JOHN DOE said the unknown man called JOHN DOE by name. JOHN DOE did not know how the man knew JOHN DOE's name. JOHN DOE saw that the man had a black knife with a handle that had "knuckles". JOHN DOE did not know why the unknown male would have a stab wound. JOHN DOE said the security guard at Bashes witnessed the incident.

17. Investigators observed JOHN DOE to have an apparent stab wound on his back. The wound was above JOHN DOE's left shoulder blade. Hospital staff at NNMC informed investigators that JOHN DOE would be transported to San Juan Regional Medical Center for additional treatment. Investigators noted that JOHN DOE was significantly older than **BODIE**.

18. During the interview with JOHN DOE, JOHN DOE provided investigators with a false name and date of birth. After finding out JOHN DOE's real name it was determined that JOHN DOE had an outstanding warrant.

19. Investigators interviewed D.Y. at Bashes Grocery store. D.Y. was an employee at the grocery store. D.Y. stated he observed two men outside the grocery store. The men were arguing with each other. D.Y. noted one man was older and one man was younger. As referenced above, JOHN DOE is known to investigators to be older than **BODIE**.

20. D.Y. said he heard the old man tell the young guy he was from "G-Town". D.Y. believed this to be a gang reference. D.Y. was standing inside the grocery store while this occurred. At some point, the younger man looked at D.Y. D.Y. gestured with

5

his finger that the young man should get going, indicating they should not fight in front of the store.

21.     D.Y. turned his attention to customers inside the store for a short time. When D.Y. turned back, the two men were fighting. D.Y. observed the young man throw the old man into the brick wall. D.Y. heard the sound as the old man's head hit the wall. D.Y. began waking toward the door where the men were fighting. D.Y. saw the young man stab the old man in his back. D.Y. told a colleague to call the cops. D.Y. observed the knife possessed by the young man. The knife had brass knuckles on the handle.

22.     D.Y. did not see the older man with a weapon. D.Y. noted the young man tried to stab the older man two or three times. After the stabbing, D.Y. saw the younger man walk off. D.Y. watched the direction the young man went so he could direct the police where he went. D.Y. saw the young man remove his jacket like he was trying to hide it or make it difficult to identify him.

23.     Investigators were able to view video surveillance at Bashes grocery store. The surveillance showed JOHN DOE walking to the store followed by **BODIE**. Investigators observed **BODIE** to be holding a knife in his left hand. JOHN DOE did not appear to be holding a weapon. JOHN DOE and **BODIE** appeared to be talking to each other near the entrance of the store. JOHN DOE and **BODIE** then lunged at each other and began to fight. The fight appears to eventually go to the ground out of view of the camera. **BODIE** and JOHN DOE fall toward the wall of the store. This supports D.Y.'s statement that he/she heard the older man's head hit the wall. After a short time, the video shows **BODIE** leaving the scene.

24. Though it is not clear at this time how **BODIE** obtained the wound to his left arm, it is clear he possessed the knife and approached JOHN DOE with that knife. It is also clear the witnesses did not observe JOHN DOE to be holding a weapon at the time of the attack. Based on my training and experience I know it is not uncommon for a knife attacker to be cut by their own weapon during an attack.

## ADDITIONAL INVESTIGATION

25. As referenced above, the incident occurred on the Navajo Reservation. Specifically, investigators determined the location to be near Global Position System (GPS) Coordinates: Latitude 36.7760607 N, Longitude -108.6993024, which is within the exterior boundaries of the Navajo Nation Indian Reservation.

26. Records state that **BODIE** is an enrolled member of Navajo Nation. Investigators have not yet received records for JOHN DOE but JOHN DOE told investigators that he is an enrolled member of Navajo Nation.

## **CONCLUSION**

27. Based on the above information, I submit that there is probable cause to believe that Josiah Bodie (**BODIE**) violated 18 U.S.C. §§ 1153 and 113(a)(3), assault with a dangerous weapon.

28. Therefore, I respectfully request that the Court approve the attached criminal complaints and issue arrest warrants.

29. This complaint was reviewed and approved by Supervisory United States Attorney Caitlin L. Dillon.

_____
Tyler Jack Rackham
Special Agent
Federal Bureau of Investigation

**Sworn telephonically, signed electronically on:**

~~Subscribed to and sworn before me~~
this __13th__ day of November 2024

_B Paul Briones_

_____
United States Magistrate Judge